# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AARON VILCEK, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No: 4:15CV1900 HEA |
| UBER USA, LLC and UBER TECHNOLOGIES, INC., | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No. 6], Plaintiffs oppose the motion. For the reasons set forth below, the Motion is granted.

### Facts and Background

Plaintiffs brought this action in the Circuit Court for the County of St. Louis, Missouri on November 12, 2015. Pursuant to the Court's diversity of citizenship jurisdiction, Defendants timely removed the action. 28 U.S.C. §§ 1332, 1441, 1446.

### Facts and Background

Plaintiffs' Petition alleges the following:

Uber developed and operates a software system that allows passengers with Uber accounts to request rides from drivers. These drivers are classified by Uber as independent contractors. Customer payments are processed automatically through Uber's system at the time a ride is requested. Uber takes a percentage of the payment, normally 20%, and passes the balance of the payment to the driver.

The St. Louis Metropolitan Taxicab Commission (the "MTC") regulates taxicabs, their drivers, and taxicab companies operating in St. Louis City and County. The MTC is organized and exists under Section 67.1800, et seq., RSMo. The MTC was created to recognize taxicab service as a public transportation system, improve the quality of the system, and exercise primary authority over licensing, controlling, and regulating taxicab services within St. Louis City and County. The MTC is authorized to license, supervise, and regulate any person who engages in the business of transporting passengers for hire, and is required by statute to establish administrative procedures for granting, denying, suspending, or revoking taxicab licenses. These procedures are stated in the MTC's Vehicle For Hire Code ("Taxi Code").

Under the Taxi Code, individuals may not operate a taxicab in St. Louis City or County without first obtaining an MTC driver's license. To obtain an MTC driver's license, a person must comply with certain requirements, including: a. being in possession of a valid Class E chauffeur's license issued by the State of

Missouri; and b. submitting to fingerprint identification as required by Section 67.1819, RSMo. Plaintiffs and all members of the putative class have complied with all MTC taxicab driver's license requirements, are in good standing with the MTC, and possess valid MTC taxicab driver's licenses.

The MTC voted September 18, 2015 to allow Uber to operate in St. Louis City and County. The MTC directed, however, that Uber drivers be fingerprinted and possess a Class E Missouri chauffeur's license, the same as all other taxicab drivers.

Uber, with intentional and contemptuous disregard for the MTC's authority and rules, and in disregard of the requirements that taxicab companies must comply with to operate taxicab services in St. Louis City and County, launched its services in St. Louis City and County on September 18, 2015 using drivers who do not comply with the Taxi Code's licensing requirements for taxicab drivers.

Uber's service is functionally and legally indistinguishable from the incumbent taxicab services in St. Louis City and County, and Uber's drivers are functionally and legally indistinguishable from the plaintiff taxicab drivers. Uber and the incumbent taxicab services each provide a vehicle-for-hire service to the public, not operating on a regular route or between fixed terminals. Uber drivers and the plaintiff taxicab drivers work as independent contractors transporting passengers assigned them by the company for a fare set by the company between

the locations directed by the passengers. Uber drivers and the plaintiff taxicab drivers each pay a fee to the company for which they work in exchange for the company's contribution to the driver's business.

Uber's entry into the taxicab business in St. Louis City and County was unlawful and in violation of the MTC's rules and the Taxi Code. Since Uber's unlawful entry into the St. Louis City and County taxicab market, plaintiffs and members of the putative Class have experienced decreases in revenue of 30-40% compared to the comparable time period in 2014 resulting from a decrease in passenger calls. Passenger calls and revenue decreases began on or about September 18, 2015 and were directly caused by Uber's unlawful entry into the St. Louis City and County taxicab market. Uber has admitted that during its first weekend of operations in St. Louis City and County, it provided passengers more than 5,000 rides. A significant portion of those rides would have gone to plaintiffs and the class but for Uber's unlawful entry into the St. Louis City and County taxicab market. Based on historical trends and the regular course of prior dealings between taxicab drivers and passengers within the St. Louis City and County taxicab market, plaintiffs and the members of the putative class have a reasonable expectation of valid future business relationships with current and prospective passengers. Plaintiffs and the class are independent contractors who routinely rely

on expected passenger demand to forecast their income and expenses, and use their expected passenger demand to schedule their work.

According to Uber, in 2014, "St. Louis is the largest city in the U.S. that does not provide residents and visitors with access to transportation options such as Uber." Uber began negotiating with the MTC to lawfully provide taxicab services in St. Louis City and County in approximately July 2014. When Uber began negotiating with the MTC, it knew that St. Louis City and County had a thriving taxicab market. Uber knew that to lawfully enter the taxicab market and compete with plaintiffs and the other members of the putative class, Uber would have to comply with the Taxi Code and obtain the required licenses for itself, its drivers, and their cars. When Uber began operating its "ride sharing service" in St. Louis City and County September 18, 2015, its drivers became direct competitors with plaintiffs and the putative class. This competition was unlawful because it was in violation of the Taxi Code and the MTC's regulations, as well as in violation of the statute creating and enabling the MTC.

Uber's direct, unlawful competition with plaintiffs and the putative class has interfered with plaintiffs' and the putative class' present and expected future business relationships with current and prospective passengers. Uber is fully capable of complying with the Taxi Code in its operations. Uber's competition with plaintiffs and the members of the putative class is without justification

because Uber's operations in St. Louis City and County knowingly violate the Taxi Code and MTC's requirements, and are therefore knowingly unlawful. As a direct result of Uber's unlawful operations in St. Louis City and County, plaintiffs have lost 30-40% of their expected revenue since the beginning of Uber's operations. Plaintiffs will continue to lose revenue for so long as Uber continues its operations in St. Louis City and County. Plaintiffs are thereby damaged, and continue to be damaged. Uber's conduct providing taxicab services in St. Louis City and County knowingly and intentionally in violation of the law is extreme, outrageous, and shows a complete indifference to and conscious disregard for the rights of plaintiffs.

Defendants now move for dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Legal Standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.' " *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009) (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. *See Twombly,* 550 U.S. at 555.

## Discussion

Initially, Defendants urged dismissal arguing that Plaintiffs lack standing to bring a cause of action based on violations of the Taxi Code since the Code does not provide for a private right of action. Plaintiffs essentially concede this point in failing to address the argument. Plaintiffs argue that they are not challenging the violations as their cause of action *per se*; rather, they argue that the violations give rise to an element of their tortious interference claim.

Under Missouri law, a claim of tortious interference with a contract or valid business expectancy consists of the following elements: (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach; (4) absence of justification; and (5) damages resulting from the defendant's conduct. *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993) (en banc) (citation omitted). Under Missouri law, "[a] plaintiff has the burden of producing substantial evidence to establish a lack of justification," and "[i]f the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Id*. at 316-17. *Rafferty v. Rafferty,* No. 4:15-CV-1543 CAS, 2016 WL 319593, at *5 (E.D. Mo. Jan. 27, 2016).

A business expectancy is a "probable future business relationship that gives rise to a reasonable expectancy of financial benefit." *Stehno*, 186 S.W.3d at 251. The business expectancy must be "reasonable and valid" and not show just a "mere hope of establishing a business relationship." *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 895 (8th Cir.2005) (quoting *Serv. Vending Co. v. Wal–Mart Stores*, 93 S.W.3d 764, 769 (Mo.Ct.App.2002)). A regular course of similar prior dealings suggests a valid business expectancy. *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370 (Mo.Ct.App.1996). Liability cannot be predicated on "speculation, conjecture, or guesswork" and essential facts cannot be inferred without a "substantial evidentiary basis." *Wash Solutions, Inc.*, 395 F.3d at 896; *Stockdall v. TG Investments, Inc.,* 129 F. Supp. 3d 871, 881 (E.D. Mo. 2015).

Plaintiffs Petition fails to satisfy the business expectancy element of a claim for tortious interference. Rather than setting out a valid and reasonable business expectancy in obtaining customers for their taxi business, Plaintiffs' claims are based on the mere hope that they will have customers for their taxis in the future. There are no allegations of a regular course of similar prior dealings with specific customers with whom it could be said Defendants interfered, nor are there any concrete allegations giving rise to a reasonable and valid business relationship. Plaintiffs' allegations are nothing more than speculation, conjecture and guesswork without a substantial evidentiary basis. The claim that Defendants improperly took

riders who would otherwise have hired Plaintiffs is frankly too tenuous to satisfy the pleading requirements of *Twombly* and *Iqbal*. As such, the claim fails to state a cause of action.

## Conclusion

Plaintiffs' Petition fails to set forth all of the necessary elements to state a claim for tortious interference with a valid business expectancy.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 6], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs are given 14 days from the date of this Opinion, Memorandum and Order to file an Amended Complaint consistent with the rulings herein.

Dated this 30th day of September, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE